UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Case No.  09-CV-00251 (MJD/FLN)

Michael M. Anderson,

                Plaintiff,

v.

Graybar Electric Company, Inc.,

                Defendant.

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| Michael M. Anderson, | Case No. 0:09-cv-00251 MJD/FLN |
| Plaintiff, | |
| v. | **DEFENDANT'S INITIAL RULE 26(A)(1) DISCLOSURES** |
| Graybar Electric Company, Inc., | |
| Defendant. | |

In accordance with the requirements of Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendant Graybar Electric Company, Inc. ("Graybar") makes the following mandatory initial disclosures. Defendant reserves the right to revise or supplement the following information consistent with the Federal Rules of Civil Procedure.

### A.   DISCLOSURE OF INDIVIDUALS UNDER RULE 26(a)(1)(A)

Defendant, in identifying particular individuals and providing a summary of information it may possess for purposes of compliance with Rule 26(a), does not imply or reflect any judgment or position regarding the admissibility of information it possesses, the application of privileges and immunities to such information, or the appropriateness of any particular discovery method or device to obtain such information. Notwithstanding the identification of such persons and accompanying descriptions, Defendant preserves all available objections to efforts to discover or use such information consistent with the Federal Rules of Civil Procedure.

Defendant discloses the following individuals likely to have information that it may use:

| Name/Address/Phone | Subject(s) of Information |
|---|---|
| Michael Anderson | Mr. Anderson has knowledge of the subject matter and claims in this litigation. |
| Rick Schroeder<br>Graybar Electric Co.<br>2300 E. 25th St.<br>Minneapolis, MN 55406 | Mr. Schroeder has general knowledge about Mr. Anderson's separation from Graybar Electric. |
| Jamie Phillips<br>Graybar Electric Co.<br>2300 E. 25th St.<br>Minneapolis, MN 55406 | Ms. Phillips has general knowledge of Mr. Anderson's alleged concerns of safety-related matters raised in 2006. |
| Lisa Matuska<br>Graybar Electric Co.<br>2300 E. 25th St.<br>Minneapolis, MN 55406 | Ms. Matuska has general knowledge of Mr. Anderson's alleged concerns of safety-related matters raised in 2006 and his separation from Graybar Electric. |
| Kevin Joos<br>Graybar Electric Co.<br>2300 E. 25th St.<br>Minneapolis, MN 55406 | Mr. Joos has general knowledge of Mr. Anderson's departure from Graybar Electric. |
| Gary LeTendre<br>Graybar Electric Co.<br>2300 E. 25th St.<br>Minneapolis, MN 55406 | Mr. LeTendre has general knowledge of Mr. Anderson's alleged concerns of safety-related matters raised in 2006 and Mr. Anderson's self-evaluation in February 2008. |

## B.   DISCLOSURE OF CATEGORIES AND LOCATIONS OF DOCUMENTS UNDER RULE 26(a)(1)(B)

Defendant is presently aware of the following categories of documents that may be used to support its defenses, copies of which are located at Defendant's local offices at

2300 E. 25th Street, Minneapolis, MN 55406 or corporate offices at 34 North Meramec Avenue, Clayton, MO 63105:

    1.     Safety council records

    2.     Personnel file of Michael Anderson

    3.     Efforts taken to address safety-related concerns

Defendant reserves the right, in accordance with Rules 26(a) and (e), to supplement this disclosure of relevant documents. In addition, the documents are confidential and will be produced once an appropriate Protective Order is in place. Discovery is ongoing.

**C.**    **DISCLOSURE OF DAMAGE COMPUTATION UNDER RULE 26(a)(1)(C)**

    Not applicable to Defendant.

**D.**    **DISCLOSURE OF INSURANCE AGREEMENT UNDER RULE 26(a)(1)(D)**

    Defendant is unaware of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy all or part of a judgment that may be entered in this action or to indemnify or reimburse for payments made to satisfy a judgment.

Dated: March 12, 2009        **GREENE ESPEL, P.L.L.P.**

                          Jacqueline A. Mrachek, Reg. No. 216434
                          200 S. Sixth Street, Suite 1200
                          Minneapolis, MN 55402
                          (612) 373-0830

                          Attorneys for Defendant Graybar Electric
                          Company, Inc.

RE: *Michael M. Anderson v. Graybar Electric Company, Inc.*
Court File No.: 09-cv-00251

| STATE OF MINNESOTA | ) | AFFIDAVIT OF SERVICE |
|---|---|---|
|  | ) ss. | BY U.S. MAIL |
| COUNTY OF HENNEPIN | ) |  |

Jennifer M. Onsgard, being duly sworn says that on the 13th day of March, 2009, she served the following:

Defendant's Initial Rule 26(A)(1) Disclosures

by enclosing in an envelope, postage prepaid, directed to the following via United States mail at his  last known address(es):

> Charles V. Firth
> Halunen & Associates
> 80 South 8th Street
> Suite 1650
> Minneapolis, MN 55402

_____
Jennifer M. Onsgard

Subscribed and sworn to before me this
13th day of March, 2009.

_____
Notary Public

LESLIE R. BULSON
Notary Public
Minnesota
My Commission Expires January 31, 2010

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Case No.  09-CV-00251 (MJD/FLN)

Michael M. Anderson,

          Plaintiff,

v.

Graybar Electric Company, Inc.,

          Defendant.

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

|  | Court File No. 09-CV-00251 (MJD/FLN) |
|---|---|

Michael M. Anderson,

             Plaintiff,            **PLAINTIFF'S INTERROGATORIES TO**

v.                                 **DEFENDANT**

Graybar Electric Company, Inc.,        **(SET I)**

             Defendant.

---

TO:    Graybar Electric Company, Inc., and its attorneys, Jacqueline A. Mrachek, GREENE ESPEL, P.L.L.P., 200 S. Sixth Street, Suite 1200, Minneapolis, MN 55402.

PLEASE TAKE NOTICE that pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Michael M. Anderson hereby requests that, within thirty (30) days after service of these Interrogatories, Defendant Graybar Electric Company, Inc., ("Graybar" or "Defendant") answer the following Interrogatories, separately and fully in writing, under oath.

In answering these Interrogatories, Defendant is requested to furnish all information, including hearsay, in possession of the Defendant's attorneys, agents, investigators, employees, independent contractors, and all other persons acting on behalf of Defendant, and not merely such information known of the personal knowledge of the person answering these interrogatories.

Response to one interrogatory or part of an interrogatory may be incorporated by reference in response to other interrogatories or parts of interrogatories.

The interrogatories which follow are to be considered as continuing to the extent permitted by the Rules of Civil Procedure, and you are requested to provide, by way of supplementary answers, such additional information as you or any other person acting on your behalf may hereafter obtain which will augment or otherwise modify your answers now given to

the interrogatories below. Such supplementary responses are to be served upon Plaintiff within 30 days after receipt of such information.

## GENERAL INSTRUCTIONS APPLICABLE TO ALL INTERROGATORIES

To "identify" a document means to state its date, its author, the type of document (e.g., letter, memorandum, telegram, chart, photograph, sound reproduction, etc.) or if the above information is not available, some other means of identifying it, its present location, and the name of any present custodian of it.

To "identify" a natural person means to state his or her full name, date of birth, job title or position, and present or last known home and business address and telephone number.

To "describe" a fact, thing, condition, action, or event means to state with specificity all facts, including but not limited to time, comprising or pertaining to such fact, thing, condition, action, or event, and to identify all persons involved in such fact, thing, conditions, action or event.

The pronoun "he" refers to both the masculine and the feminine gender.

As used herein, the term "document" or "documents" shall mean the original or copies, regardless or origin or location, of any writing or records of any type or description, including but not limited to the original and any copy of any letter, memorandum, telegram, report, record, interoffice, interoffice, intercompany or intracompany communication, handwritten or other note, tape recording, telephone call, video tape, or any other written, recorded, transcribed, filed or graphic matter whether produced or reproduced to which Defendants or any of their officers or agents or any of its counsel has or has had access.

2

When an offer is made to produce documents in lieu of answering interrogatories under the provisions of Rule 33(c) of the Federal Rules of Civil Procedure, provide the information required under such rule and, in addition thereto:

(a) identify each separate document;

(b) for each separate document, indicate the interrogatory or interrogatories it addresses;

(c) for each item in response to (b) immediately above, indicate whether the document contains all or part of the information requested;

(d) for each item in response to (c) immediately above that indicates that the document contains all of the information requested state the manner in which the requested information can be derived;

(e) for each item in response to (c) above that indicates that the document does not contain all of the information requested:

> (1) indicate the extent to which the information contained in the document is responsive to the interrogatory or interrogatories; and

> (2) state the manner in which the requested information can be derived.

## PRIVILEGED OR PROPRIETARY MATTER

If any interrogatory, request for admission, request for production of documents, or request for production of statements herein is deemed to call for privileged information or materials and such privilege is asserted, identify in writing the information or document so withheld and profile the following information:

1.   The reason for withholding the information or document; and

2.   A statement of the basis for the claim of privilege or other ground of nondisclosure.

For each document withheld, please provide the following additional information:

3.   A brief description of the document, including:

a.   The date of document;

b.   Number of pages, attachments, and appendices;

3

c.     The names of its authors or preparers and an identification by employment and title of each such person;

d.     The name of each person who was sent, shown, or provided with copies of the document, or has had access to or custody of the document, together with an identification of each such person;

e.     The present custodian; and

f.     The subject matter of the document, and in the case of any document relation to or referring to a meeting or conversation, identification of such meeting or conversation.

## LOST OR DESTROYED DOCUMENTS

If any document requested herein was at one time in existence but has been lost, discarded or destroyed, identify each such document as completely as possible, providing as much of the following information as possible;

a.     The type of document;

b.     its date;

c.     The approximate date it was lost, discarded, or destroyed;

d.     The circumstances and manner in which it was lost, discarded or destroyed;

e.     The reason(s) for disposing of the document (if discarded or destroyed);

f.     The identity of all persons authorizing or having knowledge of the circumstances of the disposal of the document;

g.     The identity of the person(s) who lost, discarded, or destroyed the document; and

h.     The identity of all persons having knowledge of the contents of the document thereof.

INTERROGATORIES

1.  State with respect to the Plaintiff:

    a.  date of original hire;

    b.  position for which Plaintiff was hired;

    c.  rate and salary of Plaintiff on his final day with Defendant;

    d.  position held by Plaintiff on his final day in Defendant's employ;

    e.  the earnings the last twelve months of Plaintiff's employment with Defendant;
        and

    f.  all fringe benefits received by the Plaintiff, including holidays, vacation pay,
        pension plan, and insurance programs.

2.  Identify all persons who you believe have any information or knowledge, or claim to
    have the same, with respect to any facts or matter relating to the allegations made in
    Plaintiff's Complaint or in Defendant's Answer. With respect to each such person, state
    the subject matter of each person's knowledge; the date, place and circumstances that
    Defendant obtained the knowledge; whether a statement was taken; whether said
    individual has been interviewed by you, your attorney, agents or representatives; the date
    of time of any interview and the name and address of the person who conducted the
    interview.

3.  Identify each and every document known to you which you know or believe may contain
    facts or information related to the claims asserted in Plaintiff's Complaint or in
    Defendant's Answer.

4.  Identify by date, time and individual, all contact you have had with any of Defendant's
    current or former employees regarding any of the claims in Plaintiff's Complaint or
    Defendant's Answer since separation from employment.

5. Identify each and every charge or claim, whether formally or informally, of retaliation brought or raised by an employee of Defendant in Minnesota during the past six (6) years. As to each, state the name, sex, address and telephone number of complainant; the date of the claim or charge; the substance of the claim or charge; and the final outcome of the claim or charge.

6. Describe each and every charge or claim, whether formally or informally, for violations of state or federal whistleblower laws, including, but not limited to the False Claims Act and the Minnesota Whistleblower Act, brought or raised by an employee of Defendant in Minnesota during the past six (6) years. As to each, state the name, sex, address and telephone number of complainant; the date of the claim or charge; the substance of the claim or charge; and the final outcome of the claim or charge.

7. Describe any and all investigations or actions taken by Defendant in response to Plaintiff's concerns regarding workplace safety or violations of federal or state law, regulations, or code during his employment with Defendant. For each investigation or action, state the date; nature of the concern or complaint; describe in detail what action was taken and the rationale behind such action; and whether or not any disciplinary action was taken against any employee or other corrective or remedial action. Identify and produce any documents related to all such investigations.

8. Describe the job requirements and qualifications for the position held by Plaintiff at the time of his termination.

9. State all facts which support Defendant's contention in its Answer that Plaintiff resigned from employment with Graybar.

10. Describe all persons with whom Plaintiff's separation from employment was discussed and the content of each conversation or communication. Provide documentation, if any, for any communication.

11. State whether and when Plaintiff was given or received an employee handbook, a policy manual, or any written materials setting forth rules and regulations concerning employee conduct. If your answer is affirmative, please produce a complete copy of all said documents.

12. State whether it was during the relevant time frame the practice of Defendant to follow the disciplinary policies set forth in the employee handbook. If it was not the Defendant's practice to follow the disciplinary policies set forth in the employee handbook, then state the circumstances under which the Defendant would not follow such procedures.

13. Identify all unofficial personnel files relating to Plaintiff and identify the name and contact information for the person who created or maintained the file and produce copies of documents contained in each file. For the purpose of this interrogatory, an "unofficial personnel file" is a file created or maintained by an employee or agent of Defendant for the purpose of storing employment-related or personal information.

14. State all facts supporting Defendant's assertion that Plaintiff made a threat of violence in relation to his separation from employment with Graybar.

15. Identify all documents used in the preparation of the responses to the foregoing interrogatories which are not filed with the Court or otherwise previously disclosed to Plaintiff during the course of any investigation or any state administrative proceeding.

16. Identify each and every person holding himself or herself out to be an expert or consultant in any field with respect to any of the issues in the case who you or your

attorney or anyone else acting on your behalf has consulted. For each such individual, state his field of expertise; the date of each contact or consultation; identify any written or oral reports made by him whether submitted in an advisory capacity or as a prospective witness; and state whether he will be called as an expert witness at trial.

17. Identify each and every person who provided information, was consulted, or participated in the preparation of the answer to these Interrogatories, and specify the particular answer(s) for which each such person was consulted, furnished information, or participated in preparing. For each person, identify which documents were reviewed, read, or consulted by that person in providing information for or participating and preparing the answers to these Interrogatories, specifying separately for each answer to these Interrogatories, the document(s) reviewed, read or consulted.

Plaintiff places Defendant on notice of its obligation under the Rules of Civil Procedure to seasonably supplement its responses to these Interrogatories. Plaintiff will object to the introduction into evidence of any information which Defendant fails to supplement or timely produce.

Dated: March 13, 2009

HALUNEN & ASSOCIATES

Charles V. Firth, Atty. No.: 0257825
Clayton D. Halunen, Atty. No.: 219721
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612-605-4098
Facsimile: 612-605-4099

*Attorneys for the Plaintiff*

8

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Case No.  09-CV-00251 (MJD/FLN)

Michael M. Anderson,

               Plaintiff,

v.

Graybar Electric Company, Inc.,

               Defendant.

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

Michael M. Anderson,

Plaintiff,

v.

Graybar Electric Company, Inc.,

Defendant.

Case No. 0:09-cv-00251 MJD/FLN

**DEFENDANT'S ANSWERS TO
PLAINTIFF'S INTERROGATORIES
(SET I)**

TO: PLAINTIFF ABOVE-NAMED AND HIS ATTORNEYS CHARLES V. FIRTH, CLAYTON D. HALUNEN AND HALUNEN & ASSOCIATES, 80 SOUTH EIGHTH STREET, SUITE 1650, MINNEAPOLIS, MN 55402.

For its Answers to Plaintiff's Interrogatories (Set I), Defendant Graybar Electric Company, Inc. (hereinafter "Defendant"), states as follows:

## PRELIMINARY STATEMENT

Defendant has not completed its discovery and investigation in this action or its preparation for trial. The following responses are based upon knowledge as of the date of these responses, and are given without prejudice to Defendant's right to produce any subsequently discovered information or to amend its responses in accordance with that information. Defendant reserves the right to revise, correct, add to, supplement, or clarify any of its responses. Defendant will supplement its responses, if necessary, pursuant to the Federal Rules of Civil Procedure.

1

## GENERAL OBJECTIONS

Defendant incorporates its Preliminary Statement and the following General Objections by reference into each specific answer provided below.

1.     Defendant objects to the Interrogatories to the extent they seek information protected by any applicable privilege or exemption, including the attorney-client privilege or attorney work product doctrine, in that, as such, they exceed the scope of permissible discovery, and the information sought will not be provided.

2.     Defendant objects to the Interrogatories to the extent they seek to impose a burden on Defendant that exceeds the requirements of Fed. R. Civ. P. 26 through 37, including but not limited to, the burden of identifying when and where information already provided in response to a previous Interrogatory is also responsive to an additional Interrogatory.    Accordingly, Defendant's responses shall be limited to the requirements of the Federal Rules of Civil Procedure.

3.     Defendant objects to Plaintiff's Interrogatories to the extent they exceed the maximum number permitted by the parties' Rule 26(f) Report.

4.     Defendant's responses to Plaintiff's Interrogatories are made without in any way intending to waive or waiving, but, to the contrary, intending to preserve and preserving:

(i)     All questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose, of any of these responses to Plaintiff's Interrogatories or the subject matter thereof, in any subsequent proceeding in this or any other action;

2

(ii)    The right to object to the use of any of these responses to Plaintiff's Interrogatories or the subject matter thereof in any subsequent proceeding in this or any other action; and

(iii)    The right to object on any ground at any time to a demand for further response to Plaintiff's Interrogatories or to any other interrogatories, requests for documents, requests for statements, or other discovery procedures involving or relating to the subject matter of Plaintiff's Interrogatories.

5.    Defendant objects to Plaintiff's Interrogatories to the extent they request information or documents which contain confidential proprietary information or information or documents which are private or confidential to Defendant's employees or former employees.

6.    Defendant objects to Plaintiff's Interrogatories as a whole to the extent they seek disclosure of information and documents not presently in Defendant's possession, custody, or control.  These responses are limited to information and documents presently in Defendant's possession, custody or control.

7.    Defendant objects to Plaintiff's Interrogatories to the extent they seek information and/or documents that Plaintiff already possesses or to which Plaintiff has equal access.

8.    Each of Defendant's responses to Plaintiff's Interrogatories is subject to the Preliminary Statement and these General Objections as well as the objections made to each specific Interrogatory.  To the extent the Preliminary Statement and General Objections are applicable, they are incorporated by reference into each of Defendant's responses to Plaintiff's Interrogatories, and by responding to certain of Plaintiff's Interrogatories, Defendant does not waive the Preliminary Statement and these General Objections or any specific objections to specific Interrogatories.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:**      State with respect to the Plaintiff:

    a.  Date of original hire;

    b.  Position for which Plaintiff was hired;

    c.  Rate and salary of Plaintiff on his final day with Defendant;

    d.  Position held by Plaintiff on his final day in Defendant's employ;

    e.  The earnings the last twelve months of Plaintiff's employment with Defendant; and

    f.  All fringe benefits received by the Plaintiff, including holidays, vacation pay, pension plan, and insurance programs.

**ANSWER:**      Defendant incorporates its Preliminary Statement and General Objections as though fully set forth herein. Defendant objects to this Interrogatory as overly broad, and vague and ambiguous as to "fringe benefits." Subject to and without waiving its objections, Defendant states:

    a.  January 15, 2001

    b.  Material Handler

    c.  Hourly rate of $17.89 and annual rate $37,405.01

    d.  Material Handler

    e.  See documents to be produced pursuant to Fed. R. Civ. P. 33(d).

    f.  See documents to be produced pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 2:**      Identify all persons who you believe have any information or knowledge, or claim to have the same, with respect to any facts or matter relating to the allegations made in Plaintiff's Complaint or in Defendant's Answer. With respect to each such person, state the subject matter of each person's knowledge; the date, place and circumstances that Defendant obtained the knowledge; whether a statement was taken; whether said individual has been interviewed by you, your attorney, agents or representatives; the date of time of any interview and the name and address of the person who conducted the interview.

ANSWER: Defendant incorporates the Preliminary Statement and General Objections as though fully set forth herein. Defendant objects to this Interrogatory as seeking information protected by the attorney-client privilege and/or work product doctrine. Defendant further objects as vague and ambiguous as to the term "statement." Subject to and without waiving its objections, Defendant states:

a. Michael Anderson. Mr. Anderson presumably has knowledge of the subject matter and claims in this litigation.

b. Rick Schroeder. Mr. Schroeder has general knowledge about Mr. Anderson's separation from Defendant. This knowledge was obtained on February 18, 2008, during the course of Mr. Schroeder's conversation with Mr. Anderson relating to Mr. Anderson's Supplemental 2 Performance Evaluation and Development Plan, which took place at Graybar's Minneapolis location.

c. Jamie Phillips. Ms. Phillips has general knowledge about Mr. Anderson's alleged safety-related matters raised in 2006. This knowledge was obtained during the course of conversations with Mr. Anderson in 2006, at Graybar's Minneapolis location.

d. Lisa Matuska. Ms. Matuska has general knowledge about Mr. Anderson's alleged safety-related matters raised in 2006. This knowledge was obtained during the course of conversations with Mr. Anderson in 2006 at Graybar's Minneapolis location. Ms. Matuska also has general knowledge of Mr. Anderson's separation from Defendant, which was obtained in approximately February 2008, during a conversation with Mr. Anderson relating his Supplemental 2 Performance Evaluation and Development Plan.

e.  Kevin Joos. Mr. Joos has general knowledge of Mr. Anderson's departure from Defendant. This knowledge was obtained when Mr. Anderson left the Graybar Minneapolis location on or about February 18, 2008.

f.  Gary LeTendre. Mr. LeTendre has general knowledge about Mr. Anderson's alleged safety-related matters raised in 2006. This knowledge was obtained during the course of conversations with Mr. Anderson at Graybar's Minneapolis location. Mr. LeTendre also has general knowledge of Mr. Anderson's Supplemental 2 Performance Evaluation and Development Plan based upon Mr. Anderson submitting the Plan to Mr. LeTendre in approximately February 2008.

g.  Cindy Paschke. Ms. Paschke has general knowledge of Mr. Anderson's Supplemental 2 Performance Evaluation and Development Plan. This knowledge was obtained in February 2008 as a result of her role as human resources manager.

**INTERROGATORY NO. 3:**     Identify each and every document known to you which you know or believe may contain facts or information related to the claims asserted in Plaintiff's Complaint or in Defendant's Answer.

**ANSWER:**   Defendant incorporates the Preliminary Statement and General Objections as though fully set forth herein. Defendant objects to this Interrogatory as seeking information protected by the attorney-client privilege and/or work product doctrine. Defendant further objects as overly broad and vague. Subject to and without waiving its objections, Defendant states: see documents to be produced pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 4:**     Identify by date, time and individual, all contact you have had with any of Defendant's current or former employees regarding any of the claims in Plaintiff's Complaint or Defendant's Answer since separation from employment.

**ANSWER:**   Defendant incorporates the Preliminary Statement and General Objections as though fully set forth herein.   Defendant objects to this Interrogatory as seeking information protected by the attorney-client privilege and/or work product doctrine.   Defendant further objects to this Interrogatory as not relevant, not likely to lead to the discovery of admissible evidence, overly broad, and vague and ambiguous as to the phrase "since separation from employment."   Subject to and without waiving its objections, Defendant states that discussions were had in mid-February regarding Mr. Anderson's Supplemental 2 Performance Evaluation and Development Plan.   Mr. LeTendre received Mr. Anderson's Supplemental 2 Performance Evaluation and Development Plan and forwarded it onto Ms. Matuska.   Ms. Matuska and/or Mr. Schroeder briefly met with Ms. Paschke to obtain advice on how to approach Mr. Anderson to better understand the statements contained in his Supplemental 2 Performance Evaluation and Development Plan.   Ms. Matuska and Mr. Schroeder met with Mr. Anderson in an effort to understand the statements on Mr. Anderson's Supplemental 2 Performance Evaluation and Development Plan.

**INTERROGATORY NO. 5:** Identify each and every charge or claim, whether formally or informally, of retaliation brought or raised by an employee of Defendant in Minnesota during the past six (6) years.   As to each, state the name, sex, address and telephone number of complainant; the date of the claim or charge; the substance of the claim or charge; and the final outcome of the claim or charge.

**ANSWER:**   Defendant incorporates the Preliminary Statement and General Objections as though fully set forth herein.   Defendant further objects to this Interrogatory as overly broad, not relevant, beyond the scope of reasonable discovery, and not likely to lead to the discovery of admissible evidence.   Subject to and without waiving its objections, Defendant states that there has been no such charge or claim other than this lawsuit.

**INTERROGATORY NO. 6:** Describe each and every charge or claim, whether formally or informally, for violations of state and federal whistleblower laws, including, but not limited to

7

the False Claims Act and the Minnesota Whistleblower Act, brought or raised by an employee of Defendant in Minnesota during the past six (6) years. As to each, state the name, sex, address and telephone number of complainant; the date of the claim or charge; the substance of the claim or charge; and the final outcome of the claim or charge.

**ANSWER:**   Defendant incorporates the Preliminary Statement and General Objections as though fully set forth herein. Defendant further objects to this Interrogatory as overly broad, not relevant, beyond the scope of reasonable discovery, and not likely to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Defendant states that there has been no such charge or claim.

**INTERROGATORY NO. 7:**   Describe any and all investigations or actions taken by Defendant in response to Plaintiff's concerns regarding workplace safety or violations of federal or state law, regulations, or code during his employment with Defendant. For each investigation or action, state the date; nature of the concern or complaint; describe in detail what action was taken and the rationale behind such action; and whether or not any disciplinary action was taken against any employee or other corrective or remedial action. Identify and produce any documents related to all such investigations.

**ANSWER:**   Defendant incorporates its Preliminary Statement and General Objections as though fully set forth herein. Defendant objects to this Interrogatory as seeking information protected by the attorney-client privilege and/or work product doctrine. Defendant further objects to this Interrogatory as not relevant and not likely to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Defendant states: see documents to be produced pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 8:**   Describe the job requirements and qualifications for the position held by Plaintiff at the time of his termination.

**ANSWER:**   Defendant incorporates its Preliminary Statement and General Objections as though fully set forth herein. See documents to be produced pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 9:**   State all facts which support Defendant's contention in its Answer that Plaintiff resigned from employment with Graybar.

8

**ANSWER:**   Defendant incorporates its Preliminary Statement and General Objections as though fully set forth herein.  On approximately February 18, 2008, Mr. Anderson walked off the job without providing any notice or reason, and never returned, despite requests from Defendant for him to contact Defendant.  Thus, Mr. Anderson abandoned his job.

**INTERROGATORY NO. 10:**   Describe all persons with whom Plaintiff's separation from employment was discussed and the content of each conversation or communication.  Provide documentation, if any, for any communication.

**ANSWER:**   Defendant incorporates the Preliminary Statement and General Objections as though fully set forth herein.  Defendant objects to this Interrogatory as seeking information protected by the attorney-client privilege and/or work product doctrine.  Defendant further objects to this Interrogatory as not relevant, overly broad, and not likely to lead to the discovery of admissible evidence.  Subject to and without waiving its objections, Defendant states that discussions were had among various individuals when Mr. Anderson walked off the job and did not return.  Those individuals include Lisa Matuska, Rick Schroeder, Cindy Paschke, Gary LeTendre, and the Minnesota Department of Employment and Economic Development.  See also documents to be produced pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 11:**   State whether and when Plaintiff was given or received an employee handbook, a policy manual, or any written materials setting forth rules and regulations concerning employee conduct.  If your answer is affirmative, please produce a complete copy of all said documents.

**ANSWER:**   Defendant incorporates the Preliminary Statement and General Objections as though fully set forth herein.  Subject to and without waiving its objections, Defendant states Plaintiff was provided materials setting forth rules and regulations concerning employee conduct.  See also documents to be produced pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 12:**   State whether it was during the relevant time frame the practice of Defendant to follow the disciplinary policies set forth in the employee handbook.  If it was not the Defendant's practice to follow the disciplinary policies set forth in the employee

handbook, then state the circumstances under which the Defendant would not allow such procedure.

**ANSWER:**    Defendant incorporates the Preliminary Statement and General Objections as though fully set forth herein. Defendant further objects to this Interrogatory as not relevant, not likely to lead to the discovery of admissible evidence, vague, ambiguous, and overly broad with regard to time frame. Defendant's practice is to follow the disciplinary procedures described in its policies and procedures.

**INTERROGATORY NO. 13:**    Identify all unofficial personnel files relating to Plaintiff and identify the name and contact information for the person who created or maintained the file and produce copies of documents contained in each file. For the purpose of this interrogatory, an "unofficial personnel file" is a file created or maintained by an employee or agent of Defendant for the purpose of storing employment-related or personal information.

**ANSWER:**    Defendant incorporates the Preliminary Statement and General Objections as though fully set forth herein. Defendant objects to this Interrogatory as not relevant and not likely to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Defendant states that to the extent any such documents exist, they will be produced pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 14:**    State all facts supporting Defendant's assertion that Plaintiff made a threat of violence in relation to his separation from employment with Graybar.

**ANSWER:** Defendant incorporates its Preliminary Statement and General Objections as though fully set forth herein. On approximately February 18, 2008, Mr. Anderson walked out the City Counter door at Graybar's Minneapolis location and stated that he had enough of this fucking place, and he made a remark to remember what happened at a school shooting in Illinois.

**INTERROGATORY NO. 15:**    Identify all documents used in the preparation of the responses to the foregoing interrogatories which are not filed with the Court or otherwise previously disclosed to Plaintiff during the course of any investigation or any state administrative proceeding.

**ANSWER:** Defendant incorporates the Preliminary Statement and General Objections as though fully set forth herein. Defendant objects to this Interrogatory as seeking information protected by the attorney-client privilege and/or work product doctrine. Subject to and without waiving its objections, Defendant states: none.

**INTERROGATORY NO. 16:**   Identify each and every person holding himself or herself out to be an expert or consultant in any field with respect to any of the issues in the case who you or your attorney or anyone else acting on your behalf has consulted. For each such individual, state his field or expertise, the date of each contact or consultation; identify any written or oral reports made by him whether submitted in an advisory capacity or as a prospective witness; and state whether he will be called as an expert witness at trial.

**ANSWER:**   Defendant incorporates the Preliminary Statement and General Objections as though fully set forth herein. Defendant objects to this Interrogatory as seeking information protected by the attorney-client privilege and/or work product doctrine. Defendant further objects to this Interrogatory because it is premature and seeks to impose obligations greater than those imposed by the Federal Rules of Civil Procedure and any Court Order. Subject to and without waiving its objections, Defendant has not yet consulted with any expert witness. Defendant will supplement this response in accordance with the Federal Rules of Civil Procedure and all applicable orders entered by the Court in this action.

**INTERROGATORY NO. 17:**   Identify each and every person who provided information, was consulted, or participated in the preparation of the answer to these Interrogatories, and specify the particular answer(s) for which each such person was consulted, furnished information, or participated in preparing. For each person, identify which documents were reviewed, read, or consulted by that person in providing information for or participating and preparing the answers to these Interrogatories, specifying separately for each answer to these Interrogatories, the document(s) reviewed, read or consulted.

**ANSWER:**   Defendant incorporates the Preliminary Statement and General Objections as though fully set forth herein. Defendant objects to this Interrogatory as seeking information protected by the attorney-client privilege and/or work product doctrine. Defendant further objects to this Interrogatory as not relevant, beyond the scope of reasonable discovery, and not

11

likely to lead to the discovery of admissible evidence.   Subject to and without waiving its objections, Defendant states that Cindy Peschke and Lisa Matuska was generally consulted in the preparation of these responses.

AS TO OBJECTIONS:

HALLELAND LEWIS NILAN & JOHNSON, P.A.

Dated: May 8, 2009

By: _Jacqueline A. Mrachek_

Jacqueline A. Mrachek, Reg. No. 216434
600 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402
(612) 204-4136

Attorneys for Defendant
Graybar Electric Company, Inc.

12

## AS TO INTERROGATORIES

STATE OF _____ )
_____ )ss.
COUNTY OF _____ )

     I, _____, being first duly sworn, depose and state as follows:

     1.    I am _____ one of the Defendants in this action.

     2.    I have read the foregoing Answers to Interrogatories and subscribe to them personally. Said Answers have been prepared on the advice and with the assistance of counsel, and are based upon information that is obtained from records still in existence, presently recollected, or thus far discovered in the course of preparation of such Answers. Subject to inadvertent or undiscovered errors or omissions and to the limitations set forth herein, said Answers are true and correct to the best of my present knowledge, information and belief.

_____

Subscribed and sworn to before me
this _____ day of _____, 2009.


_____
    Notary Public

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Case No.  09-CV-00251 (MJD/FLN)

Michael M. Anderson,

              Plaintiff,

v.

Graybar Electric Company, Inc.,

              Defendant.

# EXHIBIT 4

```
 1              UNITED STATES DISTRICT COURT

 2                 DISTRICT OF MINNESOTA

 3    ----------------------------------------------------

 4    Michael M. Anderson,

 5                      Plaintiff,

 6        vs.              Court File No. 09-CV-00251 (MJD/FLN)

 7    Graybar Electric Company, Inc.,

 8                      Defendant.

 9    ----------------------------------------------------

10

11                      DEPOSITION OF

12                      LISA MATUSKA

13

14              Taken September 22, 2009

15              Commencing at 1:32 PM

16

17

18

19        REPORTED BY:  ELIZABETH J. GANGL, RPR

20            www.paradigmreporting.com

21

22

23

24

25
```

1    Q.    More than one page?

2    A.    Probably not.

3    Q.    Just a one-page file?

4    A.    (Nods head.)

5    Q.    Is there just the one document, or is there --

6    A.    I'm sure you got copies of them all.  I don't

7  recall.

8    Q.    I'm looking for what you know and what you

9  remember.

10    A.    I know I had the documentation from the day Mike

11  left, I had follow-up notes from dealing with our

12  corporate HR people as far as their instructions of how

13  we should proceed, I had copies of the letters that I

14  typed, the job abandonment letter and the letter stating

15  last paycheck and what that would consist of.

16    Q.    Okay.  And who was your contact in HR?

17    A.    I worked mainly through Cindy Paschke, and when

18  she was not available, I worked with Beverly Probst, and

19  Renae Boik, B-O-I-K.

20    Q.    Are Ms. Probst and Ms. Boik in the Minneapolis

21  Graybar --

22    A.    No, they're in St. Louis.  They're corporate.

23              MS. MRACHEK:  You have to let him finish.

24              THE WITNESS:  Oh, I'm sorry.

25              MS. MRACHEK:  That's okay.  And then you

1   injuries, forms that need to be filed and sent to

2   corporate.

3        Q.    Once these OSHA forms are filed or filled out,

4   who reviews them?

5        A.    They get sent to our corporate risk manager.

6        Q.    Who in Minneapolis sees these files?

7        A.    Cindy Paschke sees all of them, along with, I

8   believe, the branch -- I don't know if the branch

9   managers do or not.  The manager of customer service

10  would see them all.

11       Q.    Do you believe Rick Schroeder saw these?

12       A.    I don't think so.

13       Q.    No?

14       A.    It was more an operational thing.

15       Q.    Did Mr. Schroeder have any interest in the

16  safety record of the facility?

17            MS. MRACHEK:  Objection, lack of

18  foundation, calls for speculation.

19  BY MR. WANTA:

20       Q.    You can go ahead and answer.

21       A.    Rick didn't have a need to get involved because

22  he knew it was taken care of by the operations side.

23       Q.    So going back to this conversation with Cindy

24  Paschke in which she told you to, or asked you to set up

25  a safety council.

1      A.    I was responsible to make sure they got

2  completed.

3      Q.    Yes.

4      A.    Jamie Phillips was responsible for overall

5  safety and OSHA regulations.

6      Q.    At the end, "Action items," that first section,

7  "Old Business, Action items:  Completion of all items by

8  January 31st, 2007.  Gary LeTendre."

9      A.    Yep.

10      Q.    Was he also responsible?

11      A.    He was, he reported to me, and I delegated him

12  to be responsible to make sure they were completed.

13      Q.    Help me understand the chain of responsibility

14  then for these issues.  Who was the person who was

15  primarily responsible?

16      A.    Jamie Phillips is primarily responsible for

17  safety in our district.

18      Q.    And how did you communicate to her that -- well,

19  first, the safety council, did they have authority to

20  assign tasks to Ms. Phillips?

21      A.    No tasks were assigned to Jamie Phillips.  It

22  was part of her job duty to be responsible for safety in

23  the district.

24      Q.    How did the safety council make Ms. Phillips

25  aware that there was a deadline imposed for January 31st,

1       Q.    And you testified earlier that the safety

2   committee did not have the authority to assign tasks.

3   What authority did the safety council have?

4       A.    They could make recommendations to management,

5   who could then pursue getting ...

6       Q.    And to whom did these recommendations go to?

7       A.    They would have been funneled through me and

8   Gary.  And if it was something that needed a higher level

9   of approval, sent forward to Jamie Phillips.

10      Q.    What was the procedure for communicating the

11  recommendations to -- to whom would they go first?

12      A.    They would be reflected in their meeting, in

13  their notes.

14      Q.    And how did these notes get communicated to

15  either Mr. LeTendre or you?

16      A.    We were given copies.

17      Q.    And who gave you those copies?

18      A.    Actually, they didn't do very good with note

19  taking.  No one was very proficient.  Not no one, but

20  they weren't very proficient in Word, and they didn't

21  have access to taking notes.

22      Q.    What was your response to that?

23      A.    We went back to being part of the meeting.

24      Q.    For those meetings that you weren't present,

25  what notes were made?  What documents or reports were

1    broken lamps would be disposed of in a barrel.

2         Q.    Describe the disposal process.

3         A.    They are required to wear the proper protective

4    equipment when disposing of lamps.

5         Q.    And what is the equipment?

6         A.    Leather gloves, goggles, face mask.  I think

7    that's it.

8         Q.    Was that the requirement in February of 2008?

9         A.    I don't believe the face mask was part of the

10   requirement.  It was available.

11        Q.    And whose requirement was that?

12        A.    The requirement?

13        Q.    Yeah.

14        A.    It's a requirement that Jamie Phillips and I put

15   into place after we researched for the OSHA

16   self-investigation.

17        Q.    Okay.  What type of research did you do?

18        A.    We researched online, we looked on the OSHA

19   website, which was very, it was not detailed at all as to

20   the disposal of lamps.  We called Waste Management to see

21   what the, what they proposed how we dispose of our lamps,

22   and they, and if there was any danger with the way we

23   were doing it.  They said with the quantity, the small

24   quantity of lamps and the volume size of our warehouse,

25   with the circulation, there was no danger with the way

1    usual, told us to document what had happened.

2         Q.    And how did you document what happened?

3         A.    I recorded it in a Word document.

4         Q.    What format was that document?  Do you know what

5    I mean by that?  Did you write a letter, was it in the

6    format of a memorandum?

7         A.    Just a memo.

8         Q.    Was there a template that the company uses for

9    that sort of document?

10        A.    No, no template.

11        Q.    Where did you store that document?

12        A.    I believe it was stored on our server.

13        Q.    Who had access to that document?

14        A.    Just me.  I'm sure our corporate IT people can

15   get it somehow, but ...

16        Q.    Did Mr. Schroeder say anything to Ms. Paschke at

17   that time during that meeting immediately after?

18        A.    No, not that I recall.

19        Q.    After you wrote that memorandum at Ms. Paschke's

20   request, to whom did you send that?

21        A.    I just saved it in my file.

22        Q.    To whom did you address that memorandum?

23        A.    I didn't address it.  I dated it and stated what

24   had happened.

25        Q.    Have you reviewed that document in preparation

1    a complete account of what Mr. Joos saw?

2        A.    No.

3        Q.    Did you have any conversation with Mr. Joos

4    after this e-mail was sent?

5        A.    Concerning this?

6        Q.    Concerning Mr. Anderson leaving past the city

7    desk.

8        A.    Two or three weeks later I was told that one of

9    the counter personnel had witnessed him, had witnessed

10   Mike Anderson threatening Graybar.

11       Q.    Tell me about that.

12       A.    I was told that on his way out the door, or past

13   another employee, he said something like, "Remember what

14   happened somewhere in northern Illinois."  There had been

15   a shooting.

16       Q.    What type of shooting?

17       A.    I think it was at a university.  A disgruntled,

18   someone associated with the university came back and

19   opened fire.

20       Q.    Who told you that?

21       A.    It would have been either Kevin Joos or Gary

22   LeTendre.

23       Q.    Do you have any reason to believe that

24   Mr. LeTendre wouldn't have told you about that comment

25   when he called you asking where Mr. Anderson was?

1      A.    I contacted, I told Jamie Phillips, and she

2   suggested that I call Walt Mott, our security

3   investigator at corporate, to find out what we needed to

4   do.

5      Q.    What is the name of the company again?

6      A.    Walt.   It's a person.

7      Q.    It's a person?

8      A.    Walt Mott.

9      Q.    Can you spell his last name?

10     A.    M-O-T-T.

11     Q.    What is Mr. Mott's job?

12     A.    At the time he was our securities, our security

13   investigator.

14     Q.    Is he somebody who works in the Minneapolis

15   warehouse?

16     A.    No, he works out of corporate.   He contracts.

17     Q.    And what did you tell Mr. Mott?

18     A.    I told him what had happened, that we had, Mike

19   Anderson had left the building, and on his way out he had

20   made a threat that Elmo heard.

21     Q.    Did you tell Mr. Mott that it was a matter of

22   fact?

23     A.    No.   I told him this is what was reported to me.

24     Q.    Did you tell Mr. Mott who reported it to you?

25     A.    I don't believe so.

1        Q.    Why were you still involved at this time?

2        A.    Because I was the manager of customer service

3    and responsible for that employee.

4        Q.    Is Mr. LeTendre also responsible for

5    Mr. Anderson?

6        A.    Yes.

7        Q.    Why was he not involved?

8        A.    The degree of the importance justified that I be

9    the one to do it.

10       Q.    What made this particularly important to you?

11       A.    We had an employee that left without approval,

12   without discussing it with a manager, and it was an odd

13   situation.

14       Q.    Tell me about the conversation you had with

15   Ms. Paschke regarding the document that would be coming

16   from corporate HR.

17       A.    It was, she just told me that Beverly would be

18   sending me a draft, and Cindy had to go to a job fair in

19   Iowa, so she was letting me know that Beverly would be

20   handling the situation directly with me.

21       Q.    Did Beverly e-mail that document?

22       A.    She e-mailed me a draft of it, which I copied

23   and pasted onto my letterhead.

24       Q.    Do you still have a copy of that e-mail from

25   Beverly?

```
 1       A.    I believe I do.  I haven't looked at it.

 2       Q.    What else did Beverly say in that e-mail?

 3       A.    I believe she just e-mailed me the draft of what

 4  I should use, and then I was instructed to send a copy

 5  certified and a copy regular mail.

 6       Q.    Why did she ask you to send the letter?

 7       A.    Because it was my responsibility.

 8       Q.    What made that your responsibility?

 9       A.    I was the manager.

10       Q.    Was it the company policy that all managers

11  handle terminations?

12       A.    There's not a policy as such.  It was due to the

13  importance of the situation.

14       Q.    What else did Ms. Paschke tell you to do?

15       A.    She told me that after the letter was sent out,

16  it would be followed up by, if we hadn't gotten a

17  response, it would be followed up by a letter stating the

18  last paycheck due Mike.

19       Q.    Do you ever delete any e-mail messages that you

20  receive?

21       A.    Yes.

22       Q.    How do you decide which e-mails to delete and

23  which e-mails to put in your archive?

24       A.    The e-mails I feel will be of future use I keep

25  and archive.
```

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Case No.  09-CV-00251 (MJD/FLN)

Michael M. Anderson,

              Plaintiff,

v.

Graybar Electric Company, Inc.,

              Defendant.

# EXHIBIT 5

```
 1              UNITED STATES DISTRICT COURT

 2                 DISTRICT OF MINNESOTA

 3    ------------------------------------------------

 4    Michael M. Anderson,

 5                    Plaintiff,

 6       vs.              Court File No. 09-CV-00251 (MJD/FLN)

 7    Graybar Electric Company, Inc.,

 8                    Defendant.

 9    ------------------------------------------------

10

11                   DEPOSITION OF

12                    KEVIN JOOS

13

14              Taken September 23, 2009

15              Commencing at 2:49 PM

16

17

18

19

20         REPORTED BY:  ELIZABETH J. GANGL, RPR

21              www.paradigmreporting.com

22

23

24

25
```

1    A.    On the north end pointing towards the south end

2    of the counter.

3    Q.    Did you hear Mr. Anderson say that he was fired?

4    A.    No.

5    Q.    Did you hear Mr. Anderson make any threat as he

6    was leaving?

7    A.    No.

8    Q.    Have you heard from anyone that on

9    February 18th, 2008, Mr. Anderson walked out of the city

10   counter door and stated that he had enough of this

11   fucking place?  Have you heard anybody state that?

12   A.    No.

13              MS. MRACHEK:   Other than his own testimony.

14              THE WITNESS:   Other than my own testimony.

15   BY MR. WANTA:

16   Q.    Yes, other than your own testimony.

17   A.    No.

18   Q.    Have you heard anybody state that Mr. Anderson

19   made a remark to "remember what happened at a school

20   shooting in Illinois" on approximately February 18th,

21   2008?

22   A.    No.

23   Q.    It is your recollection that as Mr. Anderson was

24   leaving the Graybar facility on February 18th, 2008, that

25   he made a remark to "remember what happened at a school

1       A.    Never a conversation, no.

2       Q.    Was there ever an occasion in which Mr. Elmar --

3    Elmar reported to you that Mr. Anderson made a comment?

4       A.    That he made a comment, but I did not, I did not

5    know what the comment was.

6       Q.    What did he tell you?

7       A.    He just referred to something in Illinois, and

8    that's all I heard.

9       Q.    Can you tell us what you recall Elmar saying to

10   you about this incident in Illinois?

11      A.    That's really all I remember, because I had no

12   recollection of what he was talking about that happened

13   in Illinois, so I didn't -- I told him to go in and talk

14   to somebody inside, let someone know.

15      Q.    When was this conversation with Elmar?

16      A.    It was, I don't know, I don't remember exactly,

17   but it was after, it was more than a, probably a week,

18   two weeks after.

19      Q.    After what?

20      A.    After Mike left the building.

21      Q.    And what did Elmar say to you?

22      A.    Just that he referenced something in Illinois, a

23   school.

24      Q.    Can you try to recite for us exactly the words

25   that Elmar said to you?

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Case No.  09-CV-00251 (MJD/FLN)

Michael M. Anderson,

Plaintiff,

v.

Graybar Electric Company, Inc.,

Defendant.

# EXHIBIT 6

```
 1                UNITED STATES DISTRICT COURT

 2                   DISTRICT OF MINNESOTA

 3     ------------------------------------------------------

 4     Michael M. Anderson,

 5                          Plaintiff,

 6          vs.                Court File No. 09-CV-00251 (MJD/FLN)

 7     Graybar Electric Company, Inc.,

 8                          Defendant.

 9     ------------------------------------------------------

10

11                         DEPOSITION OF

12                         GARY LeTENDRE

13

14                    Taken September 23, 2009

15                    Commencing at 9:06 AM

16

17

18

19

20            REPORTED BY:  ELIZABETH J. GANGL, RPR

21                   www.paradigmreporting.com

22

23

24

25
```

| | |
|---|---|
| 1 | A.    Late 2003. |
| 2 | Q.    Was he as outspoken in 2003-2004 as he was near |
| 3 | the end of his employment? |
| 4 | A.    As far as I remember, yes. |
| 5 | Q.    Did he ever raise to you any other safety |
| 6 | concerns he had about the workplace? |
| 7 | A.    Not that I can remember sitting here. |
| 8 | Q.    Do you recall hearing that Mike Anderson had |
| 9 | safety concerns, hearing that from another person telling |
| 10 | you? |
| 11 | A.    No. |
| 12 | Q.    Did Jamie Phillips ever come to you and say, |
| 13 | hey, Mike Anderson talked to me about thus and such |
| 14 | issue? |
| 15 | A.    She came to me with a list of things that Mike |
| 16 | had given her. |
| 17 | Q.    Do you remember what that list was? |
| 18 | A.    I remember some of the items on it.  I don't |
| 19 | remember all of them.  Charging of the batteries, some |
| 20 | signs hanging from a pipe above the dock area. |
| 21 | Q.    What was hanging? |
| 22 | A.    I'm sorry, what was that? |
| 23 | Q.    I'm sorry, what was hanging? |
| 24 | A.    Signs. |
| 25 | Q.    Signs.  Anything else you remember about that |

 1        A.   Yes.

 2        Q.   And it's "K Johnson," and then it has a Roman

 3   numeral II behind it?

 4        A.   Yes.

 5        Q.   If you look to the last page of the document, do

 6   you see after the scribble mark it says, "Gary said he

 7   knew about it."  Do you see that?

 8        A.   Yes.

 9        Q.   Once again, that's consistent with the other

10   Kyle Johnson notes that we looked at earlier, correct?

11             MS. MRACHEK:  Objection, misstates

12   testimony.  And you again have not laid foundation of

13   whose notes these are.

14             MR. FIRTH:  Yeah.  Do you want us to depose

15   all the attorneys?

16             MS. MRACHEK:  I think you're running out of

17   time in light of the scheduling order.

18             MR. FIRTH:  Well, maybe we'll have to do it

19   next week.

20             MS. MRACHEK:  I don't think you're going to

21   be able to do that, Charlie.

22             MR. FIRTH:  Well, we might be able to do it

23   by phone.

24             MS. MRACHEK:  I don't think you're going to

25   be able to accomplish that in light of the rules.

1        A.    Pardon me?

2        Q.    It's a performance review for Mike Anderson?

3        A.    Yes.

4        Q.    Did you perform this performance review?

5        A.    Yes.

6        Q.    And what's the date of this review.

7        A.    10/20 of '06.

8        Q.    Is this the last performance review you

9   performed of Mike Anderson before he left?

10       A.    Is this the last one?

11       Q.    Is this the last one?

12       A.    I think I did one prior to him leaving that

13  wasn't given to him because he left before I could give

14  it to him.

15       Q.    Okay.  Had you completed it?

16       A.    I completed this portion of it.  I didn't

17  administer it with him.

18       Q.    Okay.  So you did the written performance review

19  for him?

20       A.    I wrote up the complete document, and then after

21  that we normally sit down and talk about it.  The

22  sit-down part was not completed.

23             MR. FIRTH:  Jacqueline, I don't think we've

24  received that.  I don't think it's been produced.

25             MS. MRACHEK:  So to the extent it exists, I

```
 1    shape the shelving was in at the time Mike left.
 2         Q.   No. 6.  "Graybar management has ignored the
 3    Graybar Minneapolis Safety Council's recommendations on
 4    some serious safety issues."  Isn't that true?
 5              MS. MRACHEK:  Objection, misstates
 6    testimony.
 7              THE WITNESS:  I don't know what he's
 8    referring to.
 9    BY MR. FIRTH:
10         Q.   Have you ever heard of threats of violence from
11    any other employees?
12         A.   Them threatening somebody else or?
13         Q.   Right.
14         A.   No.
15         Q.   Did Mr. Joos indicate to you any other
16    information about what he may have heard Mr. Anderson say
17    as he was leaving the building?
18         A.   Kevin?
19         Q.   Yes.  I'm just going to have to call him Kevin,
20    because I can't do his last name apparently.
21         A.   I don't know that Kevin heard anything as he was
22    leaving the building.
23         Q.   Kevin never told you anything about that?
24         A.   No.  Somebody said he made a comment that he got
25    fired on the way out, and then months later the other
```

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Case No.  09-CV-00251 (MJD/FLN)

Michael M. Anderson,

Plaintiff,

v.

Graybar Electric Company, Inc.,

Defendant.

# EXHIBIT 7

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael M. Anderson,<br><br>           Plaintiff,<br><br>v.<br><br>Graybar Electric Company, Inc.,<br><br>           Defendant. | Court File No. 09-CV-00251 (MJD/FLN)<br><br><br>**NOTICE OF DEPOSITION TO<br>CINDY PASCHKE** |

TO:   Graybar Electric Company, Inc., and its attorneys, Halleland Lewis Nilan &

Johnson P.A., 220 S. Sixth Street, Suite 600, Minneapolis, MN 55402.

PLEASE TAKE NOTICE that testimony, pursuant to Rule 30 of the Federal

Rules of Civil Procedure, of Cindy Paschke will be taken upon oral examination by

stenographic means at the request of the Plaintiff in the above captioned action before a

Notary Public or other officer authorized by law to administer oath on Wednesday,

September 30, 2009 at the offices of Halunen & Associates, 1650 IDS Center, 80 South

Eighth Street, Minneapolis, MN 55402, beginning at 3:00 PM and continuing thereafter

until completed.  The deposition may be videotaped in addition to being recorded

stenographically.  This deposition is being taken for the purpose of discovery, for use at

trial or for such other purposes as are permitted under applicable statutes or rules of court.

\*               \*               \*

Dated this 25th day of September, 2009          HALUNEN & ASSOCIATES

Clayton D. Halunen (219721)
Shawn J. Wanta (0389164)
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Fax: (612) 605-4099

*Attorneys for Plaintiff*